**ETENBURN v. NEARY et al.**

No. 10183—Opinion Filed Nov. 25, 1919.

Rehearing Denied Jan. 6, 1920.

(Syllabus by the Court.)

**1. Trial—Demurrer to Evidence—Effect.**

It is a well-settled rule that a demurrer to the evidence admits all the facts which the evidence in the slightest degree tends to prove and all inferences or conclusions that may be reasonably and logically drawn from the evidence.

**2. Limitation of Actions—Recovery of Land —Statute Applicable.**

In an action by plaintiff for the recovery of real property in the possession of defendants, plaintiff asked for cancellation of a deed thereto, and for other relief. Defendant interposed the 2-year statute of limitations in bar of plaintiff's right of recovery. Held, that the primary purpose of the action was the recovery of the possession of the land, and the other grounds of relief were but incidental thereto; that, such being the case, the 15-year statute of limitations, as found in the fourth sub-division of section 4655,

Rev. Laws 1910, fixes the period within which such action may be brought.

### 3. Judgment—Res Adjudicata.

In order to make a matter res adjudicata, there must be a concurrence of the four conditions following, namely: (1) Identity in the thing sued for (or subject-matter of the suit); (2) identity of the cause of action; (3) identity of persons or parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.

### 4. Limitation of Actions—Recovery of Land —Fraud—Damages—Sufficiency of Evidence.

Record examined and held, that the trial court committed error in sustaining the defendants' demurrer to the evidence of the plaintiff; judgment reversed, and cause remanded for new trial.

Error from District Court, Oklahoma County; Jno. W. Hayson, Judge.

Wm. A. Smith, for plaintiff in error.

H. N. Boardman, for defendants in error.

Action by Sarah Etenburn against George W. Neary and others. Judgment for defendants, and plaintiff bring error. Reversed and remanded.

JOHNSON, J. This is an appeal from the district court of Oklahoma county. The plaintiff in error, as plaintiff below, commenced this action against the defendant in error, as defendant below, to recover the possession of the tract of land in controversy, for three years' rents, for the cancellation of certain conveyances, and for further damages, amounting in all to the sum of $6,000.00, charging a conspiracy between the defendants, and for fraud and deceit.

The plaintiff's petition was filed on May 5, 1917. The cause was tried to the court and jury on the 2nd day of November, 1917, and at the conclusion thereof the defendants separately demurred to the evidence of the plaintiff upon three grounds. (1) That the evidence was insufficient to entitle the plaintiff to any relief against the defendants; (2) that the evidence was wholly insufficient to establish any conspiracy whatever on the part of the defendants; (3) that it appeared from the evidence of the plaintiff that her cause of action, if any, was barred by the statute of limitations for the reason that if there was any fraud in the transaction, it was discovered by the plaintiff more than two years prior to the institution of this suit.

The demurrer of each defendant was sustained by the court, to which the plaintiff excepted and filed her motion for a new trial, which was overruled by the court and exception saved by the plaintiff, who commenced her proceedings in error in this court on August 22, 1918, by filing her petition in error with case-made attached.

The plaintiff assigns as error: (1) The overruling of her motion for a new trial; (2) in sustaining the several demurrers of the defendants; (3) in dismissing the case, discharging the jury and in rendering judgment against plaintiff in error for costs; (4) in holding as a matter of law that the statute of limitations had run in favor of all the defendants; (5) in holding that the 2-year statute of limitations applied in this case; (6) in holding that the 2-year statute of limitations applied as to the defendants Yoakum and Bergman, as they were agents of the plaintiff, and that the testimony showed that she had no knowledge of her agents' wrong until the fall of 1915 or the year following; (7) in not submitting to the jury the question as to whether or not there was any conspiracy entered into between a part or all of the defendants to defraud the plaintiff and in excluding evidence offered by the plaintiff tending to prove a conspiracy; (8) in not submitting to the jury the question as to when the plaintiff in error discovered the fraud so as to start the statute to run.

The plaintiff's cause of action, except as to the defendant Sarah L. Lee, is set out in paragraphs 2 and 3 of her petition in the following language:

Pgh. 2. "This plaintiff avers further and shows to the court that on or about the 26th day of March, 1914, she met or was introduced to John H. Bergman, one of the defendants above named, and the said Bergman introduced this plaintiff to Geo. W. Neary and Karl Fressel and Geo. R. Yoakum, the defendants herein, and said defendants in connection with one J. O. Phillips, of Springdale, Arkansas, entered into a conspiracy to cheat and defraud this plaintiff out of her land hereinbefore described; that said defendants represented and stated to this plaintiff that they had a valuable tract of fruit land in Washington county, near Fayetteville, Arkansas, that they would trade to her for her said land in Oklahoma county; that said defendants and each of them represented and stated to this plaintiff that the said tract of land in Arkansas, which contained 40 acres, was worth $8,000; that the only encumbrance on it was $2,000, and that the interest was paid up and that the mortgage had three years to run, and that there would be nothing to pay until March, 1915, and said defendants further represented and stated to this plaintiff that there was $1,500 worth of fruit on the place and that they would give her a check for $1,000 for the fruit at that time if she wanted it; that this plaintiff relying on said representations and statements agreed to exchange her said land in Oklahoma county

for said 40 acre tract in Arkansas, and thereupon the said defendants demanded of this plaintiff $250.00 as a commission for making the exchange; that plaintiff thereupon and on the 26th day of March, 1914, made and executed to one of said defendants, to wit, John H. Bergman, a mortgage upon said land in Oklahoma county for said $250.00 alleged commission; that said defendants and each of them agreed among themselves that J. C. Phillips would accompany this plaintiff to Arkansas and plaintiff did remove to Arkansas and after arriving there made and executed a deed to her said land in Oklahoma county to two of ¨the defendants, to wit, Geo. W. Neary and Karl Fressel, the consideration named in said deed being $6,000; that said deed was filed for record on the 5th day of May, 1914, with the register of deeds of Oklahoma county, state of Oklahoma; that this plaintiff moved upon the land in Arkansas which said defendants agreed to convey to her, but within 12 days after she had taken possession of said land, a suit was filed against her by some bank, the name of which she does not now remember, but which bank claimed to be the holder of the mortgage on said land, to foreclose the mortgage thereon, on account of a default in the interest due thereon."

Pgh. 3. "Plaintiff alleges and shows to the court that said defendants represented to this plaintiff that J. O. Phillips owned said 40 acres in Arkansas, but which representation was false, but after said defendants had obtained this plaintiff's land, and re-sold the same for a nominal consideration to the said defendant, Sarah L. Lee, the said ·J. O. Phillips, as a part and parcel of the conspiracy, entered into and agreed to by all the parties defendant herein, induced this plaintiff to allow him, the said J. O. Phillips, to hold the title in his name to said Arkansas land; that the plaintiff was compelled off the said land and said Phillips kept the title to said land until he traded the same off as his own property. and never accounted to this plaintiff for any of the proceeds; this plaintiff never received any consideration whatever for the deed to her said land in Oklahoma county.

"That this plaintiff did not examine the records or look into the conditions of the title to said land in Arkansas, but relied wholly upon the representations and statements of the defendants herein; that this plaintiff moved to Arkansas at a great expense and with a large family of small children, and she has never received anything whatever from the said land in Arkansas, or as a consideration for said trade."

And as to the defendant Sarah L. Lee, plaintiff alleges that on the first day of September, 1914, the said Neary and Fressel conveyed the land of this plaintiff in Oklahoma county to one Sarah L. Lee, the defendant herein; that she paid only a nominal consideration for said land and took the title of said land of this plaintiff with the knowledge that the same had been taken by her grantors by fraud and false representations, and was then in possession of said land and claimed the title thereto, and had been receiving the rents and profits since said date, and the other defendants had been benefited by said transaction to the amount of $250.00 as commission and that the plaintiff was not appraised of the fraud of the said defendants un il about November 19, 1915. and that her said farm was reasonably worth $5,000.00 and had an encumbrance against it in the sum of $750.00; that the rental value of the same for the three years was reasonably worth $250.00 a year, and that sh eotherwise had been damages in the sum of $1,000.00.

The defendants filed their separate answers, in which each denied generally and specifically the charge of conspiracy, of fraud and deceit, and pleaded the statute of limitations of two years.

The defendants Bergman and Yoakum alleged in their answer that at the time of the commencement of the negotiations between⁄ the plaintiff and J. O. Phillips for the exchange of the properties referred to, these defendants were engaged in the business of real estate brokers in Oklahoma City, and as such the plaintiff listed her farm with them for sale, and that the only connection they had with the transaction was to bring the parties together, and after being so brought together they themselves negotiated the transaction of the exchange of said properties, and that in consideration of their services in thus assisting her, the plaintiff executed a commission note and mortgage.

The defendants Neary and Fressel alleged in their answer that the sole and only transaction relating to said deal had by them was that on or about the month of April, 1914, one J. O. Phillips, R. J. Russom and R. W. Waldon, doing business under the firm name and style of J. O. Phillips Realty Co., of Springdale, Arkansas, entered into negotiations with them to the effect and for the purpose of selling and conveying the 80 acre tract of land in Oklahoma county, and that thereafter, on or about the 5th day of May, 1914, they, in good faith, and without notice, knowledge, information or belief that the plainttiff had been wronged or defrauded as charged by her, purchased the tract of land in good faith and paid value therefor, and thereafter traded said land to the defendant Sarah L. Lee for other property of value, in good faith and for valuable consideration. They further alleged that they did not leave the state of Oklahoma after said transaction, but that both of them had at all times up to the present time been actual

bona fide residents of Oklahoma county, state of Oklahoma. They further alleged that the plaintiff on the 14th day of October, 1914, brought suit against the said J. O. Phillips Realty Co., in the circuit court of Washington county, Arkansas, for the identical fraud herein charged and obtained a final and conclusive judgment therein against the said J. O. Phillips, Robert Waldon, and the said J. O. Phillips Realty Co., and the judgment is res adjudicata.

The defendant Sarah L. Lee alleged in her separate answer that she acquired the 80 acres of land in Oklahoma county by purchasing it from Geo. W. Neary and Karl Fressel in good faith, paying a valuable consideration therefor, to wit, $1,500.00, and without notice, knowledge, information or belief that the plaintiff had been wronged or defrauded out of the same. To these several answers the plaintiff filed a reply consisting of a general denial, except she admits having brought the suit referred to in the circuit court in Washington county, Arkansas, in which she recovered judgment against the defendants therein for the sum of $1,450.00, alleging that she had never collected anything whatever of said judgment, and the same was not based upon the identical cause of action alleged herein and that none of the parties defendant to this suit were parties to the suit in Arkansas.

The defendants' testimony showed in effect: That the plaintiff was a widow, living on her 80-acre farm near Britton, Oklahoma, and which farm at the time was worth $4,000.00 to $6,000.00; that said farm was well improved and had an encumbrance thereon of only $750.00, with the taxes and interest all paid up to date, and some crop and garden had been planted. Early in the spring of 1914, Bergman and Yoakum took a listing of plaintiff's property for trade for Arkansas land, agreeing to charge her a commission of 5 per cent. A few weeks later, Bergman and Yoakum introduced plaintiff to one J. O. Phillips as a party having a 40-acre fruit farm in Arkansas worth $1,000.00 which was then growing, which the said Phillips wanted to trade for the plaintiff's land. Mrs. Etenburn agreed to go to Arkansas and look at this land, Phillips accompanying her, and while not entirely satisfied with the trade, agreed to exchange her land for a certain place in Arkansas known as the Bank place. Before she went, however, Bergman and Yoakum, her agents, took from her a note for $250.00 secured by a second mortgage on her land for their commission; they assured her that Phillips was reliable and that they would see that she was treated fairly. She came back from the inspection trip and

at once advertised her personal property for sale, and only a day or so after she had returned, leaving Phillips in Arkansas, the said Phillips appeared unexpectedly on the scene and came out to her place in company with one Carrol first, and in about a week thereafter he came out to her place again in company with George W. Neary, and they looked over her farm and Neary advised the plaintiff that she should make the trade. and in the conversation between the plaintiff and Phillips and Neary, it developed that Phillips had no title to the Bank place, this being the place that Mrs. Etenburn had decided she would take. A few days after this, the plaintiff was called back to the office of Bergman and Yoakum, and after repeated assurance that she would be treated right, the plaintiff agreed to go back to Arkansas and look at another place, which the said Phillips claimed he could deliver, but before the plaintiff agreed to go back, she was shown a contract or agreement entered into between Yoakum and Bergman and Phillips, wherein the said Phillips had agreed to do certain things, and with this assurance, the plaintiff again agreed to go back and look at another place. Phillips agreed to pay the expenses of this trip, but before they had reached Muskogee, his finances were exhausted and he borrowed $6.60 from the plaintiff, agreeing to repay the same—and he has overlooked this small matter. While the plaintiff was in Arkansas she was refused permission to see anybody except Phillips and his partner and family and the deal was closed after considerable negotiations. Phillips finally agreed that he would deliver to her the Bank place, which was the one she had first looked at, he agreeing, however, that the interest was paid up for the year, and she at once moved on the place and sent for her personal belongings. Only a few days after she had moved on the farm she was sued by some party to foreclose the mortgage on the farm on account of default in interest, and through the advice of Phillips moved off the place, and she has never been able to get possession of the land and has never received one cent for her property in Oklahoma county. It was clearly established by the evidence that Bergman and Yoakum confirmed the statements and representations of the said Phillips and vouched for him in every particular.

This court has uniformly held that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove and, in addition, all the conclusions that logically may be drawn therefrom. Cameron & Co. v. Henderson, 40 Okla. 648, 140 Pac. 404; Midland Valley R. Co. v. Lawson, 41 Okla. 360, 138 Pac. 173.

Counsel for plaintiff discusses in his brief the first, second, third, sixth, and eighth assignments of error under proposition No. 1:

"The court erred under the undisputed evidence in this case in holding as a matter of law that the statute of limitations had run in favor of all the defendants in face of the evidence of the plaintiff in error that she did not discover the fraud until the fall of 1915."

Rev. Laws 1910, sec. 4657, subsec. (3), provides:

An action may be commenced, "Within two years; an action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

Section 4655, subsec. (4), provides:

"An action for the recovery of real property not hereinbefore provided for, within fifteen years."

The foregoing provisions of the statute were considered by this court in the case of Campbell v. Dick et al., 71 Oklahoma, 172 Pac. 783, and were fully discussed in the opinion of the court by Sharp C. J., wherein it was said:

"Upon the legal issues of limitations, we have already noted that the primary purpose of the action was to recover possession of the land, the legal title to which purported to be in the defendant. While it is true that the plaintiffs also asked to have the deed of July 27, 1908, canceled, and the title thereto quieted in plaintiffs, that relief was incidental to the main action, which was to recover the lands. The mere fact that plaintiffs charged that the deed was fraudulently procured, and the grantor therein was incapacitated at the time to make a valid conveyance, none the less made the action one for the recovery of the possession of the premises. The applicable statute, therefore, is not section 4657, Rev. Laws 1910, relied upon by plaintiffs in error, but section 4655, which prescribes the limitations in actions for the recovery of real property, or for the determination of any adverse right or interest therein. Section 4657, by its terms, includes several classes of actions 'other than for the recovery of real property.' Section 4656 provides for tolling the statute in actions for the recovery of real property, while section 4658 provides a different period of limitation for tolling the statute in actions other than for the recovery of real property except for a penalty or forfeiture. As the case at bar does not come within the first, second, or third subdivision of section 4655, and not being an action for the forcible entry and

forcible detention or forcible detention only of real property, it must fall within the fourth subdivision of the section, which provides that an action for the recovery of real property, not included within the first three subdivisions of the article, must be brought within fifteen years after the cause of action shall have accrued. These views find support in Reihl v. Lokowiski, 33 Kan. 515, 6 Pac. 886; and Deinschmutt v. Parent et al., 30 Kan. 548, 18 Pac. 712; also by the following decisions of other courts: Murphy v. Crowley, 140 Cal. 141, 73 Pac. 820; Shepard. v. Cummings' Heirs, 44 Tex. 502; Williams v. Allison, 33 Iowa, 278; Dunn v. Miller, 96 Mo. 338, 9 S. W. 640; Names v. Names, 48 Neb. 701, 67 N. W. 751.

"We are not unmindful that the rule announced in the foregoing Kansas cases seems to be in conflict with the opinion of that court in New et al. v. Smith, 86 Kan. 1. 119 Pac. 380, and 97 Kan. 580, 155 Pac. 1080. While we are unable to harmonize the opinion of the Kansas court in the latter case with the earlier well-considered opinions (to which no reference is made in the latter opinion), we are inclined to the view, for the reasons already stated, that the earlier opinions announced the correct rule. It seems, too, that our own court, in Webb et al. v. Logan, 48 Okla. 354, 150 Pac. 116 was inclined to the view, on the authority of New v. Smith, supra, that in such circumstances the gist of the action was to set aside the deed on account of fraud and must, therefore, be brought within two years after discovery of fraud. In so far as that case announces a rule in conflict with the instant case, it is disapproved.

"The statutes of limitation should not be so construed or applied as to require the bringing of an action for the recovery of real property in an action predicated upon fraud within a shorter period of time than in the ordinary proceedings for such recovery. In Oakland v. Carpenter, 13 Cal. 540-542, the suit was in equity to set aside certain leases on the ground of fraud in procuring the same and for possession. The court, referring to the statute of limitations with respect to actions for relief on the ground of fraud, said:

" 'We think that this provision has no relation to an equitable proceeding to set aside a fraudulent deed of real estate, when the effect of it is to restore the possession of the premises to the defrauded party. In such a case, the action is substantially an action for the recovery of the real estate; indeed, it is literally. * * * This is really an action for the recovery of real estate, and the plaintiff is no worse off because fraud has been committed upon him, nor the defendant in any better situation, than if the latter had innocently bought and entered under an imperfect title.'

"The action being in the main for the recovery of real property, we must look to the statutes of limitations which affects such actions, and not to another or different statute,

which, by its terms, does not include such actions."

We have carefully examined the entire record and are clearly of the opinion that the trial court erred in sustaining the demurrers of the defendants to the evidence of the plaintiff, and it will not be necessary to consider the other assignments of error. The cause is, therefore, reversed and remanded for a new trial.

OWEN, C. J., and PITCHFORD, McNEILL, BAILEY, and HIGGINS, JJ., concur.