WILHELM et al. v. PFINNING.

No. 30092. June 23, 1942.

Rehearing Denied Oct. 6, 1942.

*129 P. 2d 580.*

Wall & Green, of Sallisaw, for plaintiffs in error.

Stephen A. George and John Clark Caldwell, both of Ardmore, for defendant in error.

GIBSON, J. This is an action by Pauline Pfinning against Paulina Hauert, nee Wilhelm, and others, to quiet title to certain real property. Judgment was for plaintiff, and defendants appeal.

The lands in question constituted a portion of the estate of plaintiff's father, Fred L. Schoeppe, who died testate in

1915 a resident of Carter county. Schoeppe's will, according to the allegations of the petition, devised the property to plaintiff for life, then to her husband, John Pfinning, for life, with remainder to the Masonic Lodge. All parties seem to have so construed the will. We will therefore adopt the same construction.

Thereafter, on September 24, 1915, the plaintiff, for a consideration of $2,000, procured a deed on the premises from the Masonic Lodge naming therein herself and her husband as grantees. On September 20, 1920, her husband died testate a resident of the State of Arkansas, where the will was duly probated with the plaintiff and the defendant Paulina Hauert as the executrices named therein. No ancillary proceedings were had in this state.

By his will John Pfinning devised all his estate to plaintiff for life with remainder to defendants. But the lands here involved were not specifically mentioned in the will.

Plaintiff alleges that it was never intended that her husband, John Pfinning, should acquire any interest in the land by virtue of the deed aforesaid; that the same was purchased with her own funds, and that Pfinning held the half interest in trust for her, and that she was entitled to a decree establishing a resulting trust therein for her benefit.

Defendants denied that the consideration for the deed was paid by plaintiff, and alleged that John Pfinning at the time of his death was the owner in fee of an undivided one-half interest in the land by virtue of said deed, and that by reason of Pfinning's will they were the owners in remainder of said interest; that from 1919 the plaintiff had administered said estate jointly with Paulina Hauert, had accepted the provisions of the will and the benefits thereof, and by her acts had elected to take under the same, and was now estopped to dispute its validity, and was barred by laches and the statute of limitations from maintaining this ac-

tion. By cross-petition they asked that their title as devisees aforesaid be quieted against plaintiff's claims.

In reply plaintiff charged that if she had ever known that John Pfinning was named in the deed as one of the grantees, such knowledge had entirely escaped her and that she was not conscious thereof until immediately prior to the commencement of this action.

As a further muniment of title plaintiff pleaded the final decree of distribution entered in the estate of her deceased father, Fred L. Schoeppe, on February 18, 1921, wherein the entire estate was distributed to her. Said decree was pleaded as res judicata.

The facts as clearly established by the evidence were that the entire consideration for the deed from the Masonic Lodge was paid by plaintiff out of her separate funds, and that until the fall of 1939 she was unaware of the fact that her husband, John Pfinning, was named as a grantee in said deed; that plaintiff had managed the land in no manner inconsistent with her complete ownership of the fee. She attended to the leasing thereof, and had retained for herself the proceeds derived therefrom. Beyond the bare fact that Pfinning was named as one of the grantees in the deed, there is nothing in the record to indicate that plaintiff was aware of any interest adverse to her full and complete ownership in fee simple. Pfinning's will devised his estate in general terms. The land was not specifically described, except the devise included the testator's "interest in the Fred L. Schoeppe estate."

And, in substance, the above constitutes the written findings of fact of the trial court made pursuant to the request of the parties that special findings be made.

The court concluded as a matter of law that plaintiff's acts in administering the estate of John Pfinning were insufficient to estop her from maintaining this action; that she was not barred either by laches or by limitation, and that John Pfinning held title to the one-

half interest for plaintiff's benefit under a resulting trust created by reason of the fact that the consideration for said interest was paid by, and for the benefit of, the plaintiff (60 O. S. 1941 § 137).

On those findings of fact and conclusions of law the court rendered judgment for plaintiff quieting her title in the half interest standing in the name of John Pfinning.

Defendants say the judgment of the trial court was against the clear weight of the evidence and contrary to law.

The facts as proved clearly established a resulting trust in favor of plaintiff (sec. 137, supra). Whether she was guilty of laches for delay in asserting her beneficial interest was a matter for the trial court's determination from the weight of the evidence. Aside from the deed itself there was nothing to warn plaintiff that an adverse claim was in the making. She said she was unaware that Pfinning's name was in the deed, and the court believed her. Throughout the 19 years she managed the land as her own, and, in fact, it was her own, as revealed by the evidence. There is nothing to show or to sufficiently indicate that she ever pretended to claim less than the whole estate in fee simple. At least, the weight of the evidence would indicate nothing to the contrary.

It is true that the deed was of record, but that alone would not call for the application of the doctrine of laches. And we do not say whether actual notice would or would not affect plaintiff's position in the particular circumstances surrounding this case. She said she did not know that the deed contained her husband's name as a grantee. Laches is an equitable doctrine. It is applied independently of the statute of limitations in an effort to reach an equitable result. It is born of unreasonable delay. In 19 Am. Jur. 340, it is said:

"The basis of the doctrine of laches is said to be public policy which requires, for the peace of society, the discouragement of stale demands. The maxims which deal with the standing of a party to claim relief are expressive of the considerations upon which the doctrine is founded. The court will withhold relief if it would be inequitable to grant the complainant's demand."

In order, therefore, that the doctrine of laches be correctly applied, it should be first determined whether a refusal to apply would work perceptible inequity upon the one against whom the alleged stale demand is directed.

In the instant case plaintiff proved that she was the owner of the interest standing in the name of her deceased husband. There is ample evidence to show that defendants made no effort to dispose of the remainder therein allegedly devised to them by the will. Their position has not been altered, nor have they been misled in any way to their detriment. They may have thought they actually had an interest in the land, but they took no affirmative action on that belief. There is nothing to show that they will suffer in any way by reason of plaintiff's delay. Unlike the statute of limitations, laches does not depend on time alone. Mere delay is not sufficient to constitute laches. In addition, the delay must be such that an enforcement of the claim will work a hardship on the defendant to the defeat of equity.

The judgment of the trial court with respect to the resulting trust and the question of laches is not against the clear weight of the evidence.

Some argument is advanced concerning plaintiff's alleged election to take a life estate under the will, and the result of such election with reference to estoppel to assert claims contrary thereto.

The statutory right of a surviving spouse to elect is not involved here, but election and acceptance of benefits under the will to such degree as would work estoppel to assert an inconsistent claim.

However, the evidence is insufficient to show that plaintiff elected to, and did

actually, accept a life estate in the land in lieu of her own fee-simple title. Her subsequent management of the land was of the nature ordinarily employed by the life tenant or by the owner in fee. The essential elements of occupancy and ownership are the same in either case. The evidence is not sufficient to show that she managed the land other than as owner thereof. We find in her acts none of the elements of estoppel. The facts are that she at no time accepted a life estate in the land. She did nothing to mislead the defendants in that respect. Neither were they injured in any way by reason of her delay in asserting her absolute ownership in the land as cestui que trust of her husband.

The statute of limitations did not commence to run until plaintiff became aware of a violation of the trust relationship. Guyer v. London, 187 Okla. 326, 102 P. 2d 875. The attempted devise of the beneficial interest in the land would ordinarily constitute a breach of the trust, and notice of such breach would start the statute. But the devise in this case was not sufficient to put plaintiff on notice. The land was not specifically described, and the devise was of a general nature, describing the property only as testator's interest in the Fred L. Schoeppe estate. While the description may have been sufficient from a legal standpoint, with the aid of parol evidence, to identify the land as the premises here involved (69 C. J. 358), the provisions of the will in this regard were not sufficiently clear to apprise the ordinary person of their real legal purport. We could not expect the plaintiff to regard the uncertain provisions of the will as an attempt on the part of the testator to devise the land which plaintiff at all times considered as belonging to herself alone. The presumption is that the trustee will not violate his trust.

Defendants say the court erred in permitting plaintiff to testify concerning the transaction whereby the deed was procured from the lodge.

It is asserted that said transaction was between plaintiff and her husband. Defendants objected to plaintiff as a witness on the ground that she was incompetent, under 12 O. S. 1941 § 384, to testify in her own behalf in respect to the transaction had with her husband. Said section provides that no party to a civil action may testify in his own behalf concerning a transaction or communication·had personally by him with a deceased person, when the adverse party is executor, administrator, heir-at-law, next of kin, surviving partner or assignee of such deceased person where such party has acquired title to the cause of action immediately from such deceased person.

Assuming that the circumstances in this case are such as would ordinarily render plaintiff incompetent to testify concerning her transactions with her husband, the testimony given by her was not 'of that character which the statute prohibits. Her testimony was to the effect that she procured the deed. from the lodge with her own money and that her husband's name appeared therein as one of the grantees through mere inadvertence. This was not testimony concerning a transaction had with the deceased.

The judgment of the trial court is affirmed.

WELCH, C. J., CORN, V. C. J., and OSBORN, DAVISON, and ARNOLD, JJ., concur. RILEY, BAYLESS, and HURST, JJ., dissent.